UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GENMONTE RAYMONE GAITHER, )
 # 227693, )
 )
 Petitioner, )        Case No. 1:09-cv-181
 )
v. )        Honorable Paul L. Maloney
 )
MARY BERGHUIS, )
 )        **REPORT AND RECOMMENDATION**
 Respondent. )
_____ )

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. On September 17, 2004, a Jackson County Circuit Court jury found petitioner guilty of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, two counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, and unlawful possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f. On October 14, 2004, petitioner was sentenced as an habitual offender, third-felony offense. Petitioner's convictions stem from the shooting of 14-year-old Kimberly Sherman in 2004. He was sentenced to 12-to-20 years' imprisonment on the assault with intent to do great bodily harm less than murder conviction and 5-to-10 years' imprisonment for being a convicted felon in possession of a firearm. These sentences were consecutive to his two-year sentences on the felony firearm convictions. After unsuccessful efforts to overturn his conviction in the Michigan courts, petitioner brought this habeas corpus proceeding.

Petitioner claims entitlement to federal habeas corpus relief on the following grounds:

1.  Insufficiency of the evidence to support his conviction of assault with intent to do great bodily harm less than murder;

2.  The sentencing court failed to provide substantial and compelling reasons for the fact of departure or extent of departure from Michigan's sentencing guidelines;

3.  Violation of petitioner's Sixth Amendment right to counsel when his trial attorney failed to object and file a motion to suppress the tainted in-court identification by Michael Smith, and failed to file a pretrial motion requesting an expert witness on identification;

4.  The trial court violated petitioner's right to due process by allowing the tainted in-court identification by Michael Smith; and

5.  Violation of petitioner's Sixth Amendment right to counsel when appellate counsel failed to raise on direct appeal the issues petitioner later raised in his motion for postconviction relief.[1]

(Petition, docket # 1, ¶ 14, ID#s 6-11). Respondent argues that the evidence was more than sufficient to support petitioner's conviction, that petitioner's challenge to his sentence is a pure state law claim that is not cognizable on federal habeas corpus review, and that all the remaining grounds are barred by procedural defaults, not overcome by a showing of cause and prejudice or actual innocence. (docket # 8). Upon review, I recommend that the petition be denied for lack of merit in all grounds raised.

---

[1]The claim of ineffective assistance of appellate counsel is not clearly presented in the petition. Instead, petitioner incorporated arguments in a brief by reference. "GROUND FOUR" of the petition is stated as follows: "See Argument (Two) pages 24-33 of Brief in Support of Appellant's Delayed Application for Leave to Appeal." (docket # 1 at ID# 10) (citing docket # 1-3 at ID#s 137-46). This type of incorporation by reference is disfavored because it deprives the court and respondent of a clear statement of the issue being raised. Despite its cryptic presentation, I have addressed petitioner's apparent claim that his appellate counsel was constitutionally ineffective. (docket # 1-3 at ID#s 137-38).

## **Procedural History**

**A.    Trial**

Petitioner's trial began September 13, 2004, and concluded with the jury's verdicts on September 17, 2004. (Trial Transcripts "TT I-V, docket #s 15-19). The prosecution presented significant evidence of petitioner's guilt. Evidence placed him at the scene of the shooting, with a gun and with a substantial motive for shooting at Timothy Jackson, because Jackson had beaten petitioner earlier in the day as part of a larger brawl. One of the bullets fired by petitioner struck 14-year-old Kimberly Sherman, an innocent bystander, in her left leg, breaking her tibia. A white sweatshirt matching the description of the clothing worn by the shooter was found just inside the door of petitioner's apartment. Petitioner attempted to persuade a friend to help him flee the State of Michigan because he shot someone.

The shooting arose from longstanding disputes between young women in the Cleveland and Jackson families. (TT I, 165; TT III, 358). On March 13, 2004, this animosity boiled over into a fist fight on Mason Street in Jackson, Michigan, followed shortly thereafter by the shooting that resulted in petitioner's criminal convictions. The Jacksons lived in a house on Mason Street. The Jackson group included three siblings (Timothy Jackson, Antoinette Jackson, and Vetoinette Jackson), Antoinette's daughter Camilla Jackson, and Vetoinette's daughter Sammone Jackson. (TT I, 156-57; TT II 240-41, 273). The Cleveland group consisted of petitioner, his girlfriend Jameka Cleveland (a/k/a "Meka"), Jameka's sisters Shalanda Cleveland, Penny Jones and Kimberly Sherman, and a friend named Kimbra Hodges. (TT I, 159-63, 219; TT II 480-92). It appears that the catalyst for the violence on March 13, 2004, was a stone thrown at a van driven by Jameka Cleveland. (TT I, 161; TT II 303, 358, 360).

Jameka Cleveland drove up in the green van and parked it near the Jacksons' residence. Petitioner, the four Cleveland sisters, and Kimbra Hodges exited the van. Verbal taunts rose to the level of exchanged blows. (TT I, 166-67; TT III, 360). Camilla Jackson squared off against Kim Sherman. Jameka Cleveland fought with Sammone Jackson. (TT I, 166, 187, 211; TT II, 252-53; TT III, 361). At some point, petitioner attempted to intervene to assist his girlfriend, Jameka Cleveland. Petitioner ended up in a fight with Tim Jackson (and possibly others). By most accounts, petitioner came out on the losing end of his exchange of blows with Tim Jackson. (TT III, 361-62, 364-65, 373, 496, 524). The fist fight ended when petitioner, the Cleveland sisters, and Kimbra Hodges left the scene in the green van. (TT III, 365, 496).

Kimbra Hodges was a key witness against petitioner. Ms. Hodges testified that she was a friend of Jameka Cleveland and knew her sisters. (TT II, 480-81). She identified petitioner and called him by his first name, Genmonte. (TT II, 483). She testified that petitioner was the only male occupant in the van. (TT II, 482-91). She described the brawl and how petitioner lost his fight with the other men. (TT II, 491-96). Hodges was a passenger in the van as it left the scene of the fight. (TT II, 376). Jameka Cleveland drove to a residence on Second Street, where petitioner exited the van and met with an unidentified male. Petitioner and this unidentified individual went into the house for 5 to 10 minutes, then petitioner returned to the van. (TT III, 365-68, 380).

Kimbra Hodges testified that petitioner said that he had a gun. (TT II, 503-04, 510). Jameka Cleveland drove the van past a group of individuals walking on the sidewalk on Wilkins Street. Tim Jackson was in this group. Petitioner immediately asked to be dropped off at nearby Hinkley's Bakery, which was in the direction Tim Jackson and others were walking. (TT III, 373-74). Petitioner was dropped off at Hinkley's Bakery on the corner of Wilkins and Blackstone. (TT

II, 497-99, 517).  Kimbra Hodges testified that after petitioner was dropped off, Jameka initially drove away, but then she turned the van around in a church parking lot.  When Jameka drove the van back down Wilkins Street, Kimbra Hodges saw a young girl on the ground screaming and bleeding from her wound.  (TT II, 506-09, 513).

Tim Jackson testified that he and a few of his friends had been walking along Wilkins Street, headed for a party store.  Kimberly Sherman joined them.  (TT II, 289, 313-14).  Just before the shooting started, Tim Jackson saw Jameka Cleveland drive past in the green van with petitioner as a passenger.  (TT II, 297-98).  Petitioner was dropped off at Hinkley's Bakery.  (TT III, 373-74, 498, 533, 556).  Marshal Parson testified that he saw a black man wearing a "white hoodie" jump out of the van and run behind the bakery.  (TT II, 391).  Seconds later, at least three shots were fired at Tim Jackson.  Police recovered three shell casings next to the bakery building.  (TT III, 419-20, 445-47, 481-82).  One of the bullets pierced and shattered Kimberly Sherman's leg.  (TT II, 316-17).

Michael Smith testified that he was outside on the sidewalk on Wilkins Street talking to Kimberly Sherman, Tim Jackson, Josh Krieger, and a person named Mike.  (TT II, 450).  Smith saw a green van drive by.  He testified that the passenger in the van had a gun in his hand.  Smith identified petitioner as that passenger.  (TT II, 453-54).  On cross-examination petitioner's attorney elicited testimony from Smith conceding that he made no comment to any of his companions about seeing a gun.  Smith testified that he thought the man had been wearing black because he did not remember seeing any colors.  (TT II, 464).  Smith confirmed that he never saw anyone shoot a gun. (TT II, 466).  Smith denied telling the police that he had seen two armed black males in the van, one on the passenger side with the sliding door open and the other in the front passenger seat with the window open.  Smith further denied stating that these men opened fire from the van.  (TT II, 465-

66).  Officer Renteria later testified regarding the statement Michael Smith gave to him immediately after the shooting.  (TT III, 478).  Smith told Officer Renteria that there were two armed black males and that they had been shooting from inside the van.  (TT III, 479-80, 486).

Stephanie Norris testified that she saw the shooting.  The gunman was a black male.  He was wearing a white hooded sweatshirt and was standing next to the bakery when he fired the shots.  (TT II, 336-38, 346).  Ms. Norris saw the victim lying on the ground.  (TT II, 339).  The manager of the apartment complex where petitioner and Jameka Cleveland lived testified that on the date of the shooting, petitioner was wearing a white hooded sweatshirt.  (TT III, 350).  William Newman, another resident of the apartment complex, testified that petitioner was wearing a white hooded sweatshirt.  (TT II, 368, 377).  Other witnesses heard the shots and saw a man in a white hooded sweatshirt running from the scene of the shooting.  (TT II, 397, 412).  Police found a white hooded sweatshirt on a couch just inside the door of the apartment petitioner shared with Jameka.  They also found petitioner's driver's license and W-2.  (TT II, 353; TT III, 354, 498-99, 504).

Timothy Jackson informed the police that the green van that witnesses observed immediately before and after the shooting had been used by the individuals involved in the brawl earlier that day.  (TT III, 494).  Police had very little difficulty locating the green van.  They arrested Jameka Cleveland on the date of the shooting.  (TT III, 385-86, 493-95).  Petitioner proved more elusive.  He contacted Anthony Martin and asked Martin for a ride out of the State of Michigan because he shot someone.  (TT III, 394, 401).  Police eventually apprehended petitioner in Detroit.

Petitioner's attorney's closing argument focused on the presumption of innocence and the prosecutor's burden to prove petitioner's guilt beyond a reasonable doubt.  He placed particular emphasis on the lack of evidence supporting the most severe criminal charge petitioner faced:

assault with intent to murder. (TT IV, 610-14). He emphasized the differences in the testimony of various witness, particularly the testimony regarding petitioner's clothing on the date of the shooting. Among other things, petitioner's attorney argued that Michael Smith's testimony was not credible because Smith gave a significantly different version of events to Officer Renteria immediately after the shooting. (TT IV, 622-23). Defense counsel laid the foundation for this strategy in his opening statement.[2] (TT I, 142). Further, counsel's cross-examination of Smith at the preliminary examination had cemented Smith's testimony denying the accuracy of the statement he gave to Officer Renteria on the date Kimberly Sherman was shot. (Preliminary Examination at 60-61, docket # 11).

On September 17, 2004, the jury returned verdicts finding petitioner guilty of assault with intent to do great bodily harm less than murder, two counts of possession of a firearm in the commission of a felony, and one count of possession of a firearm by a convicted felon. (TT V, 6-10).

On October 14, 2004, Judge Edward J. Grant sentenced petitioner as an habitual offender, third-felony offense. (Sentencing Transcript (ST), docket # 20). The judge noted that petitioner's earlier convictions included a felony conviction for assault with intent to do great bodily harm less than murder on which he had received a sentence of 4-to-10 years' imprisonment. (ST, 12). Judge Grant determined that a sentence of 12-to-20 years' imprisonment was appropriate for petitioner's most recent conviction for assault with intent to do great bodily harm less than murder. (ST, 15). The judge determined that the suggested minimum sentence of 29-to-85 months under

_____

[2]Michael Smith's testimony was such a minor component of the prosecution's case against petitioner that Smith was not even mentioned in the prosecutor's opening statement. (TT I, 126-37).

Michigan's guidelines failed to adequately take into account petitioner's prior assaultive felonies and the fact that petitioner had discharged a gun in a densely populated residential area and caused an innocent third-party to suffer serious injuries:

And the guidelines for the assault with intent to do great bodily harm call for a minimum sentence of 29 to 85 months. As has been indicated by the Prosecutor, and I would indicate also, Mr. Gaither, this is a most serious matter here. And, as it happened here, an innocent person is shot. You start shooting down a residential street.

Unless you happen to be an excellent shot, the chances are, with a handgun, the bullets are going to go other than, perhaps, where you wish to direct them, as it did here, and strike this other young lady who's just going to the party store, minding her own business.

She's fifteen or sixteen years of age and, of course, now she suffers with a broken leg and the problems that are associated with that, some of which she makes mention in the Presentence Report here.

This is a residential area. There's people all over the area. There's a lot of children that live in those houses and, quite often, they're out playing on the sidewalk and in the front yard. So, I guess we're lucky, because it happened in March when it was cold and many of these children, perhaps, were inside, because I think, as the Prosecutor has pointed out, or at least alluded to, this could be a much more serious situation.

Might have been a bunch of little children out there and one of them got hit in the head and killed or you would have killed the young lady or even if you'd have killed Mr. Jackson here, the situation you're facing would be much more serious than it is here. You just can't take a gun and start firing it down the street.

As I say, the guidelines then for the assault GBH are 29 to 85 months as a third felony. The Court is deviating over the guidelines for, in the Court's opinion, the assault with intent to do great bodily harm.

The guidelines on the accessing points for the prior felonies – while you get points for the prior felonies, they do not consider that you have two assaultive prior felonies, one of which is for the identical type offence that I'm sentencing you for: assault with intent to do great bodily harm less than murder, as well as resisting and obstructing a police officer. And now, again, you've been convicted of assault with intent to do great bodily harm less than murder.

The guidelines, in the Court's opinion, also do not adequately consider that the shooting took place during the day in a densely-populated residential area with numerous

children residing in that area and with people out and about walking down the street and that an innocent third party was the one that was actually shot. The guidelines do not adequately consider those factors, so I'm deviating over the guidelines.

(ST, 13-15). Judge Grant sentenced petitioner to 5-to-10 years' imprisonment for being a convicted felon in unlawful possession of a firearm. (ST, 16). These sentences were consecutive to petitioner's two-year sentences on the felony firearm convictions. (ST, 16-17; 10/14/04 Judgment of Sentence Commitment to Department of Corrections, copy found in Michigan Court of Appeals record, docket # 21).

**B.      Appeal as of Right to Michigan Court of Appeals**

Petitioner appealed as of right to the Michigan Court of Appeals. Appellate counsel raised two issues:

1.      Was defendant denied his right to due process when he was convicted of assault with intent to do great bodily harm less than murder on the basis of legally insufficient evidence?

2.      Should this case be remanded for resentencing where the sentencing court failed to provide substantial and compelling reasons for the fact of the departure or the extent of the departure?

(Statement of Questions Presented, Appellant's Brief on Appeal at iii, found in Michigan Court of Appeals Record, docket # 21). On May 11, 2006, the Court of Appeals affirmed petitioner's convictions and sentence.

The Michigan Court of Appeals rejected petitioner's argument that the evidence was insufficient to support his conviction for assault with intent to do great bodily harm less than murder. The court, applying the familiar *Jackson v. Virginia* standard, found that there was more than sufficient evidence to support the jury's verdict.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial by viewing the evidence in a light most favorable to the prosecution and determining whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). A reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of the crime. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

To convict a defendant of assault with intent to do great bodily harm less than murder, the prosecution is required to establish the following beyond a reasonable doubt: "(1) an assault, coupled with (2) a specific intent to do great bodily harm less than murder." *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996). Additionally, identity is always an essential element of a criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). In this case, defendant argues that there was insufficient evidence to establish that he was the shooter. We disagree. When viewed in a light most favorable to the prosecution, the evidence supported defendant's identity as the shooter. He had a motive, had a gun, was in the area at the time of the shooting, and was wearing clothes matching the shooter[']s. Additionally, there was evidence that, after the shooting, he admitted to accidentally shooting someone. The evidence taken as a whole supports a reasonable inference that the defendant committed this assault.

(Op., 1-2, docket # 21).

The Court of Appeals rejected petitioner's challenge to the trial judge's upward departure from the recommended minimum sentence under Michigan's sentencing guidelines on the assault with intent to commit great bodily harm less than murder conviction. Applying state sentencing law, the appellate court found that the sentencing court appropriately departed from the advisory guideline range. (Op. 2-3).

### C.    Application for Leave to Appeal to the Michigan Supreme Court

Petitioner sought discretionary review of the same issues by Michigan's highest court. On September 26, 2006, the Michigan Supreme Court denied petitioner's application for review

because it was "not persuaded that the questions presented should be reviewed by this Court."
(9/26/06 Op., docket # 22).

### D. Motion for Post-conviction Relief and Related Appeals

Petitioner filed a motion in Jackson County Circuit Court seeking post-conviction relief under Michigan Court Rule 6.500. ("Motion for Relief from Judgment 6.500," docket # 1-9, ID#s 295-97). Petitioner argued that his trial attorney was constitutionally ineffective (1) because he failed to object to the in-court identification made by Michael Smith on the ground that it was tainted by two impermissibly suggestive pretrial procedures, (2) because he failed to file a pretrial motion to suppress the in-court identifications made by Michael Smith, and (3) because he failed to request appointment of an expert witness on identification to aid the jury. (*Id.* at ID# 926). Further, petitioner argued that the trial court had violated his due process rights by allowing Smith's "tainted" in-court identification and that his appellate counsel had been constitutionally ineffective when he failed to raise on direct appeal the issues petitioner raised in his motion. (*Id.*).

On June 8, 2007, Judge Grant denied petitioner's motion for post-conviction relief:

To prevail in this motion, the Defendant must show both "good cause" for not raising this issue in his appeal as of right as well as "actual prejudice," such that "but for the alleged error, (he) would have had a reasonably likely chance of acquittal." The Court is satisfied that the Defendant has failed to establish each of these elements. He has not established good cause for failing to raise the issue in the appeal as of right and has additionally failed to establish that there was actual prejudice. Michael Smith identified the Defendant as the person that he observed in a van with a gun, Mr. Smith did not see the actual shooting that took place; however, he described the individual that he observed in the van with a gun as a black male; Defendant was the only black male in the van. Other witnesses testified that the Defendant had stated that he had a gun and that he was upset about a fight that he had been involved in shortly before and that when he observed the people that [] had been involved in the previous altercation, the Defendant exited the van at Wilkins and Blackstone Streets and was seen to go behind the bakery located on the corner from which shots were eventually fired. Police officers testified that they located shell casings by the bakery. Other

witnesses testified that the Defendant had asked for a ride out of the state of Michigan and stated that he had accidentally shot someone. The Court finds that even if the identification of Mr. Smith had been suppressed for some reason, the Defendant has not shown a reasonably likely chance of an acquittal in this cause.

(6/8/07 Op. and Order at 2-3, docket # 1-9, ID#s 304-05). Petitioner filed a motion for reconsideration. (docket # 1-9, ID#s 307-11). On July 9, 2007, Judge Grant denied petitioner's motion for reconsideration. (7/9/07 Order, docket # 1-9, ID# 313).

Petitioner sought discretionary review of the same issues in the Michigan Court of Appeals. On April 18, 2008, the Court of Appeals denied petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (4/18/08 Order, docket # 23). On November 25, 2008, the Michigan Supreme Court denied petitioner's application for review because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (11/25/08 Order, docket # 24).

### E.   Habeas Corpus Petition

On March 4, 2009, petitioner filed his petition for federal habeas corpus relief in this court raising the grounds rejected on direct appeal by the Michigan Court of Appeals and by Judge Grant on his motion for post-conviction relief.

### Standard of Review

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*,

271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States;[3] or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010).

## Discussion

Respondent raises the defense of procedural default to all grounds raised by petitioner other than grounds 1 and 2. Under a long line of Supreme Court cases, an adequate and independent finding of procedural default by the state courts will also bar federal habeas review of a federal claim, unless the habeas petitioner can show cause for the procedural default and prejudice attributable thereto. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012). The doctrine of procedural default is applicable where petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011); *VanHook v. Bobby*, 661 F.3d 264, 269 (6th Cir. 2011). The state may assert a procedural default when the last reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence. *Murray*, 477 U.S. at 485; *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).

---

[3] Under this standard, a lower court must ground its decision on the "holdings" as opposed to the "dicta," of Supreme Court decisions as of the time of the relevant state-court decision. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[.]' 28 U.S.C. § 2254(d)(1). It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. at 2155.

In the present case, it appears that the prerequisites to a finding of procedural default are present. The grounds petitioner raised in his motion for post-conviction relief were not raised in his appeal as of right. *See e.g.*, *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012); *Taylor v. McKee*, 649 F.3d 446, 452 (6th Cir. 2011). Consequently, in the usual case, petitioner would have the burden of showing cause and prejudice or actual innocence to overcome the default. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Murray v. Carrier*, 477 U.S. at 488.

Both the Supreme Court and the Sixth Circuit have indicated, however, that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008). In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

## I.      Sufficiency of the Evidence

In ground 1, petitioner challenges the sufficiency of the evidence supporting his assault with intent to do great bodily harm less than murder conviction. A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's

responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *see Cavazos v. Smith*, 132 S. Ct. 2, 3-4 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial."). Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> Thus, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:
>
>> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).

In the present case, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. (Op., 1). The Court of Appeals found that the evidence was sufficient to support the jury's verdict. (*Id.* at 1-2). The elements of assault with intent to do great bodily harm less than murder are: (1) an assault, coupled with (2) specific intent to do great bodily harm less than murder. *People v. Bailey*, 549 N.W.2d 325, 331 (Mich. 1996). A rational fact-finder could easily find that the evidence presented was sufficient to meet each of these elements. The Court of Appeals noted that witness testimony, if accepted by the jury, established that petitioner "had a motive, had a gun, was in the area at the time of the shooting, and was wearing clothes matching the shooter[']s. Additionally, there was evidence that

after the shooting, he admitted to accidentally shooting someone." (Op., 2). I find that the decision of the Michigan Court of Appeals regarding the sufficiency of the evidence supporting petitioner's assault with intent to do great bodily harm less than murder conviction easily withstands scrutiny under the double layers of deference to which it is entitled under AEDPA.

## II.      Sentencing

In ground 2, petitioner argues that this case "should be remanded for sentencing" because Judge Grant "failed to provide substantial and compelling reasons for the fact of departure or extent of departure from Michigan's sentencing guidelines." Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Petitioner now concedes that his challenge to his sentence raises a pure state-law issue and he asks the court to "dismiss this issue" from his petition. (docket # 28, ID# 385). Ground 2 has been withdrawn and, in any event, it would not provide a basis for federal habeas corpus relief.

## III.     In-Court Identification by Michael Smith

In ground 4, petitioner argues that the trial court violated his due process rights by allowing a "tainted" in-court identification by Michael Smith. Petitioner states that Smith testified at preliminary examination hearings and that on these occasions, petitioner was wearing prison clothing and seated at the defense table with his attorney. Petitioner argues that the trial court judge

-18-

should not have allowed Michael Smith to identify him at trial without first having conducted a

non-suggestive identification proceeding. Judge Grant denied petitioner's motion for post-

conviction relief. It is presumed that he rejected petitioner's argument on the merits. *Johnson v.*

*Williams*, No. 11-465, __ U.S. __, 2013 WL 610199, at * 6-7 (Feb. 20, 2013). Petitioner has done

nothing to overcome this strong presumption. *Id.* Accordingly, deferential AEDPA standards

apply. 28 U.S.C. § 2254(d).

The Supreme Court held in *Perry v. New Hampshire*, 132 S. Ct. 716, 181 (2012), that

the Due Process Clause does not require preliminary judicial inquiry into the reliability of eyewitness

identification unless the identification was procured under unnecessarily suggestive circumstances

arranged by law enforcement officers. In the absence of official misconduct, challenges to the

reliability of eyewitness identification are matters for the jury to determine on the basis of the

evidence, and do not require previous judicial screening on due-process grounds. "The fallibility of

eyewitness evidence does not, without the taint of improper state conduct, warrant a due-process rule

requiring a trial court to screen the evidence for reliability before allowing the jury to assess its

creditworthiness." 132 S. Ct. at 728. In this case, petitioner does not assert that the identification

was procured under unnecessarily suggestive circumstances arranged by law enforcement.

Consequently, under *Perry*, the question of the reliability of the in-court identification was one for

the jury, and petitioner was not entitled to a ruling from the trial judge on the issue.

Under the AEDPA, the Court is generally required to review the state-court decision

on the basis of the law as it existed at the time of the decision. *See Onifer*, 255 F.3d at 317-18. At

the time of petitioner's conviction and direct appeal, the controlling Sixth Circuit authority on the

issue of suggestive identifications was *Thigpen v. Cory*, 804 F.2d 893 (6th Cir. 1986). Under

*Thigpen*, a trial judge was required to conduct a preliminary assessment of the reliability of an eyewitness identification made under suggestive circumstances, even if not arranged by police. 804 F.3d at 895.

*Thigpen*, however, was expressly abrogated by the Supreme Court's decision in *Perry*. The Sixth Circuit has held that a petitioner cannot obtain relief on the basis of the state court's alleged unreasonable application of precedent that no longer is good law. *See Desai v. Booker*, 538 F.3d 424, 428 (6th Cir. 2008). In other words, habeas corpus relief is not warranted in cases where a change in the law would not benefit the petitioner if he was granted relief. If Petitioner were granted a new trial in this case, the proceedings would be conducted under current law, including *Perry*, 132 S. Ct. at 728, and petitioner would not be entitled to a hearing on the issue of identification. I find that ground 4 does not provide a basis for federal habeas corpus relief.

### IV. Ineffective Assistance of Trial Counsel

In ground 3, petitioner argues that his trial attorney was constitutionally ineffective when he failed to object and file a motion to suppress Smith's in-court identification and failed to file a pretrial motion requesting an expert witness on identification. Claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. 466 U.S. at 687-88. In adjudicating the first prong of the standard, the court must judge the reasonableness of

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

Because Judge Grant determined that petitioner's claims of ineffective assistance of counsel were meritless, his decision must be afforded deference under AEDPA. *See Harrington v. Richter*, 131 S. Ct. at 784; *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Bourne*, 666 F.3d at 414. "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)(*per curiam*).

The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable."

*Id*.  As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Petitioner does  not approach satisfying this demanding standard.  Smith was not a major witness.  Judge Grant found that the jury would have reached the same result, even if the identification by Smith had been suppressed.  "Other witnesses testified that [petitioner] had stated that he had a gun and that he was upset about the fight that he had been involved in shortly before and that when he observed the people that [] had been involved in the previous altercation [petitioner] exited the van at Wilkins and Blackstone Streets and was seen to go behind the bakery located on the corner from which shots were eventually fired.  Police officers testified that they located shell casings by the bakery.  Other witnesses testified that [petitioner] had asked for a ride out of the state of Michigan and stated that he had accidentally shot someone.  The Court finds that even if the identification of Mr. Smith had been suppressed for some reason, [petitioner] has not shown a reasonably likely chance of an acquittal in this cause." (06/08/07 Op. and Order at 2-3).  I find that the state-court decision rejecting petitioner's claims of ineffective assistance of trial counsel was not "an unreasonable application of clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).

Judge Grant apparently did not deem worthy of a separate discussion petitioner's argument that his trial counsel was constitutionally ineffective when he failed to file a pretrial motion requesting an expert witness.  It must be presumed that the trial court rejected petitioner's argument

on the merits, and petitioner has done nothing to overcome this presumption. *Johnson v. Williams*, 2013 WL 610199, at * 6-8. Deferential AEDPA standards apply. 28 U.S.C. § 2254(d).

Petitioner's claim of ineffective assistance of counsel for failure to ask for appointment of an expert witness on identification fails for numerous reasons. Trial counsel's decision to rely on cross-examination attacking the identification provided by Michael Smith was a reasonable tactical decision. *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Mitchell v. Bauman*, No. 2:10-cv-12054, 2012 WL 4364659, at * 13 (E.D. Mich. Aug. 27, 2012); *see also Span v. Bell*, No. 2:10-cv-13835, 2012 WL 6200292, at * 13-14 (E.D. Mich. Dec. 12, 2012) (The Supreme Court has never recognized a constitutional right to the appointment of an expert in eyewitness identification.). "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011). Petitioner's counsel actively pursued the issue through cross-examination and argument. (TT II, 464-66; TT IV, 622-23). Counsel's performance was not deficient. *See Jackson v. Bradshaw*, 681 F.3d 753, 763 (6th Cir. 2012) ("Based on defense counsel's statements and impeachment effort, we cannot conclude that defense counsel failed to pursue this issue."); *Dorch v. Smith*, 105 F. App'x 650, 656 (6th Cir. 2004). Further, the substance of evidence that could have been presented to the jury by an expert was presented to petitioner's jury through cross-examination and the arguments of petitioner's attorney. *See Mitchell v. Bauman*, 2012 WL 4364659, at * 13 (collecting cases).

Petitioner has not and cannot demonstrate that counsel's deficient performance resulted in an unreliable or fundamentally unfair outcome. Petitioner cannot show that he was

prejudiced by counsel's failure to obtain and call an expert witness. Petitioner's attorney cross-examined Smith regarding his identification. The Sixth Circuit has noted: "[T]he hazards of eyewitness identification are within the ordinary knowledge of most lay jurors." *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). In light of the cross-examination of Smith and the arguments made by petitioner's attorney, there is not a reasonable probability that the result at trial would have been different if an expert had testified. *See Mitchell v. Bauman*, 2012 WL 4364659, at * 14. Finally, an eyewitness identification expert would have done little to undermine Kimbra Hodges' damaging testimony. She knew petitioner, testified that petitioner indicated that he had a gun, and testified that petitioner was dropped off at the bakery location from which the shot which hit Kimberly Sherman was fired. The dangers of misidentification are generally limited to eyewitness identifications of strangers or persons with whom the witness is not very familiar. "[F]or obvious reasons, the identification of a person who is well known to the eyewitness does not give rise to the same risk of misidentification of a person who is not well known to the eyewitness." *Id.* The state court decision rejecting petitioner's claims of ineffective assistance of trial counsel easily withstands scrutiny under AEDPA standards. 28 U.S.C. § 2254(d).

### V.    Ineffective Assistance of Appellate Counsel

In ground 5, petitioner argues that his appellate counsel was constitutionally ineffective when he failed to raise on direct appeal the issues that petitioner later raised in his motion for post-conviction relief. The trial court denied petitioner's motion for post-conviction relief. It must be presumed that the court rejected petitioner's argument on the merits, and petitioner has done

nothing to overcome the presumption.  *Johnson v. Williams*, 2013 WL 610199, at * 6-8.  Deferential

AEDPA standards apply.  28 U.S.C. § 2254(d).

Claims of ineffective assistance of appellate counsel are measured under the standards

established by the Supreme Court in *Strickland*.  *See Evitts v. Lucey*, 469 U.S. 387 (1985).  Petitioner

must prove (1) that appellate counsel's performance fell below an objective standard of

reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an

unreliable or fundamentally unfair outcome.  466 U.S. at 687-88.

Appellate counsel acts within the fair range of professional assistance when counsel

chooses not to assert weak or unsupported issues on appeal.  *See Smith v. Murray*, 477 U.S. 527, 536

(1986).  Tactical choices regarding issues on appeal are properly left to the sound judgment of

counsel.  *See United States v. Perry,* 908 F.2d 56, 59 (6th Cir. 1990).  "'Winnowing out weaker

arguments on appeal and focusing on' those more likely to prevail, far from being evidence of

incompetence, is the hallmark of appellate advocacy."  *Smith v. Murray*, 477 U.S. at 536 (quoting

*Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  Where appellate counsel is charged with

ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was

incompetent."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  To overcome the presumption of

competence of appellate counsel in these circumstances, a petitioner must show that the omitted

issues were "clearly stronger" than those counsel chose to assert.  *Id.*; *see Bourne v. Curtin*, 666 F.3d

411, 414 (6th Cir. 2012) (Petitioner "must show the issues his appellate counsel failed to raise were

'clearly stronger' than the issues his counsel did raise.").  The meritless issues petitioner raised in

his motion for post-conviction relief were not clearly stronger than the issues his appellate counsel

raised.  Appellate counsel has no duty to raise meritless issues.  *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Petitioner does not approach satisfying this demanding standard.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:   February 22, 2013          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).